# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed April 2, 1924.

## KIRSCH
## VS.
## JONES.

*Daniel Ellison* for plaintiff.
*Gilbert H. Panitz* for defendant.

DAWKINS, J.—

THE COURT: Gentlemen, it is not often a man sells his property the same day to two people. The suit is for the specific performance of a contract for the sale of 604, 606 and 608 Laurens street. The contract was between this complainant, Nathan Kirsch and Charles H. Jones, and dated January 31, 1923. Under the contract there were five hundred dollars paid in cash as a deposit, a five thousand dollar mortgage was to remain and the balance was to be paid in thirty days. There is some conflict as to the ground rent, one said forty-seven dollars and the other said fifty dollars. The complainant admits he has not examined the title so he has put himself on record as willing to take title in accordance with the agreement which he considers his contract.

Now, the plaintiff wanted the property, apparently wanted it very badly. His agent began dickering for it some time before, saw it several times, saw a sign on the property three weeks before January 31st, telling intending purchasers to apply to Jones himself, no suggestion was made of an agent or anybody else, save the owner as the seller of the property. The first price mentioned was ten thousand dollars. The plaintiff offered him less, which was a very natural thing to do, offered him eighty-five hundred dollars. Then this dickering and bargaining and negotiating went on, and finally one day the defendant's attorney advised him that he had an offer of ninety-two hundred and fifty dollars, then it was that the defendant became very much emboldened and didn't care very much whether or not Mr. Kirsch bid for the property.

Acting on the statement of Mr. Panitz, the defendant advised the plaintiff that he had somebody down town waiting for him who would give ninety-two hundred and fifty dollars. The defendant said to Kirsch, if you pay me ninety-five hundred dollars I will sell for that. Kirsch didn't seem to delay very much but said he would give ninety-five hundred dollars. Now, at that time the plaintiff and defendant were apparently free to trade. The defendant himself wrote the contract and took from the plaintiff five hundred dollars on account.

There is the only one thing that gives me any difficulty. The defendant Jones said that he told the plaintiff ninety-five hundred dollars would buy, subject to the possibility of a sale down town. Neither the defendant nor the plaintiff, however, knew at that time about the sale by Mr. Panitz. It took place the same day whether 10 o'clock or 12 o'clock, is not very clear, I cannot determine whether 10, 11, 12 or 2.30 o'clock was the hour of the sale to the second party the actual notice was given to the defendant at 2.30, so certainly all the dealing had been consummated before that hour.

The second sale deposit appears to have been two hundred and fifty dollars, but it is always satisfying in situations of this kind to feel that nobody is really hurt and so far as the plaintiff here and this defendant, the owner of the property, are concerned when the check for five hundred dollars is used the other deposit having been used to give a credit on some other obligation of the defendant to Mr. Panitz, it can easily be returned to the second vendor. Mr. Panitz, although he admited the sale, didn't report it apparently until the afternoon and as a fact, Mr. Panitz officially in writing did not report it until the 4th of February, so it was three or four days before he notified this plaintiff as attorney for Jones, to take his check back as the sale had been made to another.

If Jones made any promise to Mr. Panitz he will have to take care of that himself. The only serious question is whether or not the alleged con-

ditions were made, but even if they were I think it was not brought home to the complainant definitely that the agent had this second agreement for the defendant. The defendant took his five hundred dollars and although he didn't deposit the check there was a delay in notifying him. There is a question suggested as to confirmation. There was no actual confirmation by the wife until afterwards because the defendant said he later took the contract to her and had her endorse it. If it is necessary to have any confirmation of a contract of this character; it was not given until after the first sale. As was suggested in the case of Brown in 138 Md., an attorney cannot bind his client to sell something by verbal notification especially when the rights of another had accrued. There is no doubt about it that no formal confirmation was had and no notification given to sell or of sale concluded except what was said over the telephone, that if you can get ninety-five hundred dollars for it, sell it. The plaintiff bought first from the owner, who was acting for himself and then he had not confirmed the other sale. It is evident that while Mr. Panitz acted apparently as if he had the right to sell, yet he must to have thought that there was some doubt about his authority because he got the defendant's wife to confirm the sale. I feel under the circumstances of this particular case that this contract entered into by the plaintiff, should be enforced. I am prepared to sign a decree. I have some doubt but I have tried to solve it in the best way that I can. My conclusions seem to be fair. I am ready to sign a decree.